JANCIS L. FULLER *v.* COMMISSIONER OF
CORRECTION
(AC 22084)

Dranginis, Landau and Shea, Js.

Argued September 23, 2002—officially released February 11, 2003

*Jancis L. Fuller*, pro se, the appellant (petitioner).

*Madeline A. Melchionne*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (respondent).

*Opinion*

DRANGINIS, J. The petitioner, Jancis L. Fuller, appeals from the habeas court's dismissal of her petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly concluded that the conditions of her confinement at York Correctional Institution in Niantic did not constitute cruel and unusual punishment within the meaning of the eighth amendment to the United States constitution.[1] We disagree with the petitioner and affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our disposition of the petitioner's appeal. The petitioner was charged with the crimes of attempt to commit murder, attempt to commit assault in the first degree and carrying a pistol or revolver without a permit in connection with events occurring on June 29, 1995.

---

[1] The eighth amendment to the United States constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

After a jury trial, she was sentenced to a total effective term of thirty years incarceration. This court affirmed the judgment of conviction in *State* v. *Fuller*, 56 Conn. App. 592, 744 A.2d 931, cert. denied, 252 Conn. 949, 748 A.2d 298, cert. denied, 531 U.S. 911, 121 S. Ct. 262, 148 L. Ed. 2d 190 (2000).

On November 10, 1998, the petitioner filed a pro se petition for a writ of habeas corpus, alleging that the conditions of her confinement violated the eighth amendment. Specifically, she argued that the respondent commissioner of correction inflicted cruel and unusual punishment on her by failing to have a housing classification system that separated violent and nonviolent prisoners. The petitioner further argued that the respondent's practice of confining two inmates in the same cell (double celling) resulted in a loss of her privacy, subjected her to malodorous and unhealthy conditions, and required her to live with numerous cell mates who made threatening comments. Finally, the petitioner argued that the respondent acted with "deliberate indifference" when he failed to take appropriate preventive measures to protect her from being physically assaulted by an allegedly violent cell mate. In response, the respondent asserted that he did not violate the petitioner's eighth amendment right, because he was unaware of an obvious risk to her health or safety. Following a two day evidentiary hearing, the court dismissed the petition and later granted a petition for certification to appeal. This appeal followed.

At the outset, we set forth our standard of review. "The conclusions reached by the trial court in its decision to dismiss the habeas petition are matters of law, subject to plenary review . . . . Thus, [w]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Internal quotation marks omit-

ted.) *Smith* v. *Commissioner of Correction*, 65 Conn. App. 172, 175, 782 A.2d 201 (2001).

The eighth amendment, which applies to the states through the due process clause of the fourteenth amendment to the United States constitution; see, e.g., *Rhodes* v. *Chapman*, 452 U.S. 337, 344–45, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981); "prohibits detention in a manner that constitutes cruel and unusual punishment." *Hunnicutt* v. *Commissioner of Correction*, 67 Conn. App. 65, 66, 787 A.2d 22 (2001). "Cruel and unusual punishment refers to punishment that involves the unnecessary and wanton infliction of pain or is grossly disproportionate to the severity of the crime." *Santiago* v. *Commissioner of Correction*, 39 Conn. App. 674, 683, 667 A.2d 304 (1995). Under the eighth amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates . . . ." (Citation omitted; internal quotation marks omitted.) *Farmer* v. *Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). The gravamen of the petitioner's claim is that the respondent's failure to house violent prisoners separately from nonviolent prisoners created conditions of her confinement that were so potentially dangerous as to constitute cruel and unusual punishment. The petitioner claims that the respondent failed to protect her from an assault at the hands of her cell mate, who she alleges has had multiple convictions for violent crimes.

Every injury suffered, however, at the hands of an inmate does not necessarily translate into constitutional liability for prison officials. See id., 834. In challenging the conditions of confinement, the prisoner must meet two requirements. First, the alleged deprivation of adequate conditions must be objectively, sufficiently serious; id.; such that the petitioner was denied "the minimal civilized measure of life's necessities . . . ."

(Citation omitted; internal quotation marks omitted.) *Wilson* v. *Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991). Second, the official involved must have had a sufficiently culpable state of mind described as " 'deliberate indifference' " to inmate health or safety. *Farmer* v. *Brennan*, supra, 511 U.S. 834. In that context, subjective deliberate indifference means that "a prison official cannot be found liable under the [e]ighth [a]mendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety . . . ." Id., 837.

Applying those standards to the facts of the present case, we agree with the court's conclusion that the petitioner failed to allege facts demonstrating either the objective or subjective components of a valid eighth amendment claim. Our review of the record indicates that much of the evidence that the petitioner presented merely showed that the respondent had knowledge of the facts surrounding her assault, but does not support the objective element of "serious harm." The court, in its memorandum of decision, confirmed that fact. It stated that it was "unable to make a conclusive finding concerning what transpired in the petitioner's cell on February 15, 1996." Nonetheless, the court stated that it did not "discount the possibility that [the petitioner] was involved in a physical altercation with her cell mate which resulted in the *minor* injuries which she sustained on that date." (Emphasis added.) With respect to the subjective element, however, the issue is not whether the respondent had knowledge of the attack. Rather, the evidence must show that the respondent had actual knowledge of a substantial risk of serious harm facing the petitioner and disregarded that risk by failing to take reasonable measures to abate that risk. See id., 837.

Under *Farmer*, the respondent has no liability if he can show "that [he] did not know of the underlying facts indicating a sufficiently substantial danger and that [he was] therefore unaware of a danger, or that [he] knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id., 844. In other words, "the [respondent] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] must also draw the inference." Id., 837.

In this case, the court properly concluded that the respondent was not deliberately indifferent because he did not actually draw the inference that the petitioner was exposed to a specific risk of serious harm. Other than the report of the 1996 assault, the petitioner provided documentation regarding two previous complaints she had lodged with the respondent, but she never alleged in those complaints that she specifically had informed the respondent of a risk of violence against her from her cell mates or other inmates.

Even if we assume that the petitioner could have proven that the respondent had actual knowledge of the risk, we find nothing in the record other than the respondent's reasonable responses to guarantee the petitioner's safety. For example, after the altercation between the petitioner and her cell mate, the respondent took immediate corrective steps and transferred the offending cell mate to another unit.

The petitioner's claim that a housing classification system would have eliminated the risk of assault is unavailing. Nothing in the record suggests that the petitioner would benefit from such a system in light of the nature of the charges that underlie her incarceration. Moreover, the record discloses that the cell mate about whom she complained, although a repeat offender, was

not a violent offender.[2] The record, therefore, supports the court's conclusion that the conditions of the petitioner's confinement did not rise to the level of a deprivation of a basic human need. Without such evidence, the petitioner has failed to demonstrate that the respondent acted with deliberate indifference to her health and safety.

We next examine the petitioner's implicit argument that the double celling of inmates in and of itself violates the eighth amendment. That argument is without merit.

The United States Supreme Court explained in *Rhodes* v. *Chapman,* supra, 452 U.S. 347–50, that double celling inmates in units built to house only one inmate, by itself, does not result in any deprivation of basic human needs. The petitioner has only alleged that double celling made her incarceration uncomfortable, and she has not connected it to other conditions affecting a prisoner's quality of life, such as inadequate food, improper medical care or deprivation of exercise. Therefore, we agree with the court that the deprivation was not "sufficiently serious" to demonstrate that the conditions fell beneath "the minimal civilized measure of life's necessities." Id., 347. We have no doubt that sharing a cell with another inmate may sometimes be uncomfortable; however, as the Supreme Court has stated, "the [c]onstitution does not mandate comfortable prisons . . . ." Id., 349. "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id., 347. Therefore, we reject that portion of the petitioner's claim and conclude that she has not alleged sufficient facts to constitute an

---

[2] In its memorandum of decision, the court noted that the cell mate had convictions for larceny, possession and sale of narcotics, and violation of probation. Her criminal conviction record did not show convictions for any crimes of violence.

eighth amendment violation. The court, therefore, properly dismissed the petitioner's habeas petition.

The judgment is affirmed.

In this opinion the other judges concurred.