# WILLIAM FARADAY *v.* COMMISSIONER OF CORRECTION
## (AC 26340)

Schaller, Gruendel and Harper, Js.

Argued December 2, 2005—officially released April 18, 2006

*Neil Parille*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Henri Alexandre*, assistant attorney general, for the appellant (respondent).

*Kim Coleman Waisonovitz*, for the appellee (petitioner).

*Opinion*

HARPER, J. The respondent, the commissioner of correction, appeals from the judgment of the habeas court ordering her to provide certain medical services to the petitioner, William Faraday. The respondent claims that the court improperly granted the petitioner habeas

relief without first concluding that the petitioner suffered from a serious medical condition and that, if the court did reach such a conclusion, it was not supported by the evidence. The respondent also claims that the court improperly concluded that she was deliberately indifferent to the petitioner's condition. We affirm the judgment of the habeas court.

The petitioner pleaded guilty under the *Alford* doctrine[1] to sexual assault in the third degree and risk of injury to a child. Following the trial court's imposition of a sentence in accordance with the plea,[2] the petitioner was charged with violating two conditions of his probation. The court concluded that the petitioner had violated both conditions, revoked the petitioner's probation and ordered the petitioner to serve the twelve year sentence originally imposed. Our Supreme Court upheld the court's judgment. *State* v. *Faraday*, 268 Conn. 174, 842 A.2d 567 (2004).

In December, 2002, the petitioner filed a petition for a writ of habeas corpus. The petitioner alleged that the conditions of his confinement were inhumane or dangerous to him because the respondent denied him necessary medical care for a back condition.[3] The petitioner alleged, inter alia, that a magnetic resonance imaging (MRI) scan of his back and an operation to repair herniated discs in his back were medically necessary, and that the respondent had denied his requests for the same.

In April, 2003, the court conducted an evidentiary hearing related to the petition and dismissed the peti-

---

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] The court sentenced the defendant to a twelve year term of imprisonment, execution suspended, and five years of probation.

[3] The petitioner also alleged that the respondent denied him necessary medical treatment for an elevated blood cholesterol level. This allegation is not germane to this appeal.

tion. Shortly thereafter, the petitioner filed a motion for "reconsideration and reargument." The petitioner represented that, since the time of the court's dismissal of his petition, he came into possession of evidence from Manchester Memorial Hospital to substantiate his claimed disability, evidence that he did not possess at the time of the prior hearing. In May, 2003, the court granted the petitioner's motion.

The court conducted a second hearing on February 14, 2005.[4] Among the evidence presented by the petitioner were the results of a computed tomography (CT) scan performed on him in November, 1992,[5] as well as the results of an MRI scan performed on him in October, 2003. In an oral ruling,[6] the court found that the petitioner suffered from a herniated disc. The court concluded that the respondent's failure to provide the petitioner with the evaluative services of a neurologist or a neurosurgeon reflected deliberate indifference to the petitioner's medical needs. The court ordered the respondent "to have the petitioner evaluated for his disc or back problem by a neurosurgeon or a neurologist to determine what course of action should be taken, if any." The court later granted the respondent's petition for certification to appeal.

Before addressing the respondent's claims, we set forth the relevant constitutional principles that apply to the petitioner's claim for relief. "The scope of relief available through a petition for habeas corpus is limited. In order to invoke the trial court's subject matter jurisdiction in a habeas action, a petitioner must allege that

---

[4] The petitioner appeared pro se before the habeas court during the first hearing but was represented by counsel at the time of the second hearing. The petitioner is represented by counsel in this appeal.

[5] The petitioner represented that this CT scan was not in his possession at the time of the April, 2003 hearing.

[6] The court subsequently signed a transcript of its ruling, thereby bringing its decision into compliance with Practice Book § 64-1.

he is illegally confined or has been deprived of his liberty. Our Supreme Court found that [t]he writ of habeas corpus, as it is employed in the twentieth century, however, does not focus solely upon a direct attack on the underlying judgment or upon release from confinement . . . but is available as a remedy for issues of fundamental fairness implicating constitutional rights." (Citation omitted; internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, 39 Conn. App. 674, 679, 667 A.2d 304 (1995); see *Sanchez* v. *Warden*, 214 Conn. 23, 33, 570 A.2d 673 (1990).

The eighth amendment to the constitution of the United States, made applicable to the states by the fourteenth amendment, provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." "Cruel and unusual punishment encompasses more than barbarous physical punishment. . . . It also includes punishments which involve the unnecessary and wanton infliction of pain . . . and those which are grossly disproportionate to the severity of the crime. . . .

"The test for determining whether a given set of conditions of confinement violates the eighth amendment is not static. It is determined by the evolving standards of decency that mark the progress of a maturing society. . . . These standards are established not by the opinion of experts as to desirable prison conditions . . . nor by the subjective views of judges, but rather by objective factors to the maximum extent possible. . . . Unquestioned and serious deprivations of basic human needs . . . and deprivation of the minimal civilized measure of life's necessities . . . are obvious cases of eighth amendment violations. . . . But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their

offenses against society." (Citations omitted; internal quotation marks omitted.) *Arey* v. *Warden*, 187 Conn. 324, 328–29, 445 A.2d 916 (1982).

"The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment . . . . In its prohibition against cruel and unusual punishments, the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive force against prisoners. . . . The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates . . . ." (Citations omitted; internal quotation marks omitted.) *Farmer* v. *Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

In *Estelle* v. *Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), the United States Supreme Court concluded: "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." (Citation omitted; internal quotation marks omitted.) Id., 104–105. The *Estelle* court observed: "[T]he [Eighth] Amendment proscribes more than physically barbarous punishments. . . . The Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . against which we must evaluate penal measures. Thus, we have held repugnant

to the Eighth Amendment punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society . . . or which involve the unnecessary and wanton infliction of pain . . . .

"These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical torture or a lingering death . . . the evils of most immediate concern to the drafters of the Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. . . . The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself." (Citations omitted; internal quotation marks omitted.) Id., 102–104.

A prisoner seeking habeas relief on the basis of his conditions of confinement, which includes the medical care made available to him,[7] bears the burden of establishing both aspects of his claim. "First, the alleged deprivation of adequate conditions must be objectively, sufficiently serious . . . such that the petitioner was denied the minimal civilized measure of life's necessities . . . . Second, the official involved must have had

---

[7] "[T]he medical care a prisoner receives is just as much a 'condition' of his confinement as the food he is fed, the clothes he is issued, the temperature he is subjected to in his cell, and the protection he is afforded against other inmates." *Wilson* v. *Seiter*, 501 U.S. 294, 303, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).

a sufficiently culpable state of mind described as deliberate indifference to inmate health or safety." (Citation omitted; internal quotation marks omitted.) *Fuller* v. *Commissioner of Correction*, 75 Conn. App. 133, 136–37, 815 A.2d 208 (2003).

Our standard of review is well settled. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact . . . ." (Citation omitted.) *Duperry* v. *Solnit*, 261 Conn. 309, 335, 803 A.2d 287 (2002).

I

The respondent first claims that the court improperly granted the petitioner habeas relief without first concluding that the petitioner suffered from a serious medical condition. The respondent also claims that, if the court reached such a conclusion, it was not supported by the evidence. We disagree with both aspects of this claim.

A prisoner seeking relief under the eighth amendment on the basis of inadequate medical care must demonstrate the objective aspect of his claim; the prisoner must establish that a *serious* medical condition exists that requires medical care. *Wilson* v. *Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991). Certainly, every denial of a prisoner's request for medical care does not reflect cruel and unusual punishment. The seriousness of a prisoner's medical condition must be evaluated on a case-by-case basis in light of a standard of "seriousness" that has proven difficult for courts to articulate. "Because society does not expect that prisoners will have unqualified access to health care, a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth

Amendment claim for denial of medical care." (Internal quotation marks omitted.) *Smith* v. *Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). The standard is met where there is " 'a condition of urgency, one that may produce death, degeneration, or extreme pain' . . . ." *Hathaway* v. *Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. *Foote* v. *Hathaway*, 513 U.S. 1154, 115 S. Ct. 1108, 130 L. Ed. 2d 1074 (1995), quoting *Nance* v. *Kelly*, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting); see also *Johnson* v. *Wright*, 412 F.3d 398, 403 (2d Cir. 2005); *Morales* v. *Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002); *Hemmings* v. *Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998). Factors also deemed relevant when assessing a medical condition include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." (Internal quotation marks omitted.) *Chance* v. *Armstrong*, 143 F.3d 698, 702, aff'd, 159 F.3d 1345 (2d Cir. 1998).

## A

As a matter of law, the respondent properly asserts that the court could not afford the petitioner relief in the present case if it did not conclude that a serious medical condition existed. The respondent's trial counsel specifically asked the court to make findings concerning the petitioner's "serious medical condition" if it was to rule in the petitioner's favor. The court explicitly found that the petitioner suffered from a herniated disc. Although the court did not explicitly label this condition a "serious medical condition," it is abundantly clear from the court's decision that it deemed this condition to be "serious" in nature, such that it gave rise to an urgent need for medical evaluation.

### B

We now address the respondent's claim that the evidence did not support a conclusion that a serious medical condition existed. The respondent argues that, even if the evidence supported a conclusion that the petitioner's back condition was a serious medical condition at the time of the first hearing in April, 2003, there was no evidence that this condition existed at the time of the second hearing in February, 2005. The respondent argues that the evidence before the court in April, 2003, supported a finding that the petitioner had a condition in his back that caused him to experience pain that " 'comes and goes.' " Moreover, the respondent argues that, at the time of the court's judgment, the most recent evidence concerning the petitioner's condition consisted of a 2003 MRI scan report that supported a finding that the petitioner suffered from degenerative disc disease. The respondent asserts that, at the time of the February, 2005 hearing, "there was no evidence before the court concerning the likely progression of this condition or the pain it might cause." The respondent further asserts that there were no recent medical records in evidence and that "there was no evidence that the petitioner experienced any back pain from the time of the first hearing until the time of the second hearing nearly two years later."

The court heavily relied on two exhibits in making findings about the petitioner's condition. First, the court relied on a report prepared on November 13, 1992, by Arthur Ostrowitz, a medical doctor affiliated with Manchester Memorial Hospital. The report discussed the results of a CT scan performed on the petitioner, indicating "[d]isc herniation with right leg pain weakness and numbness." The report further stated: "At the L4-S1 level we see a mild generalized bulge without focal protrusion. At the L5-S1 level we see a central and right sided herniated migrated disc which appears to extend

upward to nearly the level of the L4-5 disc." The report concludes: "Herniated migrated central right sided disc herniation at the L5-S1 level."

The court also relied on an October, 2003 "Diagnostic Radiologic Report" that stated the results of an MRI scan performed on the petitioner. The report includes findings of "desiccation involving L4-5 intervertebral disc," "evidence of decreased height, as well as desiccation involving the L5-S1," "mild diffuse disc bulge" at the L4-5 level, "a small central disc protrusion" at L5-S1 and "mild facet joint arthritic changes seen at L3-4, L4-5, L5-S1." Among the report's conclusions were findings of "[d]egenerative disc disease with mild diffuse disc bulge at L4-5" and "[s]mall central disc protrusion with degenerative disc disease at L5-S1."

The court accepted as true the findings and conclusions set forth in these reports. The court discussed the fact that these reports "track[ed] each other" in terms of their relevant findings and their shared conclusion, which was that the petitioner suffers from degenerative disc disease. The court stated that "common sense" required it to find that "there is a bulge at L4-5 and there is also a herniated disc at L5-S1."

In his habeas petition, the petitioner represented under oath that his condition caused him "constant discomfort, sometimes to the point [that it is] difficult to walk, or even sit for periods of time." The petitioner further represented that he experienced "constantly mild pain" at most times and that he has attempted to alleviate his pain through exercise and the use of pillows during times of rest. At the time of the first hearing in April, 2003, the respondent elicited testimony from Edward Blanchette, a medical doctor and the clinical director of the department of correction. Blanchette testified, on the basis of his review of the petitioner's medical records, that the petitioner had complained

to prison medical staff of pains that "come and go." Blanchette testified: "I do know that he has back pain, and I certainly admit that, and I do know that he has degenerative joint disease in his spine." Blanchette also opined that he expected the petitioner to continue to experience "low back pain exacerbations." It was undisputed that, apart from seeking further diagnostic services and surgery, the petitioner sought accommodations from prison officials for the purpose of alleviating his back pain.[8]

There was sufficient evidence to demonstrate that the petitioner suffered from a serious medical condition in April, 2003, at the time of the first hearing. The evidence demonstrated that the petitioner suffered from disc disease that was degenerative in nature and caused the petitioner significant pain, albeit not constant pain. The evidence permitted a conclusion that the petitioner suffered from the type of chronic painful condition that a reasonable physician or patient would find worthy of comment and that negatively and significantly affected the petitioner's daily life. There is no basis in the record, or by the exercise of common sense, to find that the petitioner's back condition, a condition that was documented in 1992 and, by virtue of its nature, existed at the time of the first hearing in 2003, ceased to exist at the time of the second hearing in 2005. Similarly, there is no basis on which to conclude that the painful side effects of this degenerative condition abated at the time of the second hearing. Accordingly, we reject the respondent's claim that the court improperly concluded that the petitioner suffered from a serious medical condition in 2005.

---

[8] These accommodations included permission to possess an additional pillow, a foam pad and a special mattress. The petitioner also was assigned to a bottom bunk in his prison cell.

## II

The respondent next claims that the court improperly concluded that she deliberately was indifferent to the petitioner's condition. We disagree.

A prisoner seeking relief under the eighth amendment on the ground of inadequate medical care must also demonstrate the subjective aspect of his claim, which is that prison officials deliberately have been indifferent to his medical condition. "The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. . . . To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind. . . . In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety . . . ." (Citations omitted; internal quotation marks omitted.) *Farmer* v. *Brennan*, supra, 511 U.S. 834. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inferences could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id., 837; see also *Hunnicutt* v. *Commissioner of Correction*, 67 Conn. App. 65, 69, 787 A.2d 22 (2001) (absent finding of deliberate indifference, finding of serious medical need alone renders claim nonconstitutional).

If the prison officials were merely negligent in denying the petitioner's treatment, it would not constitute an eighth amendment violation. Similarly, medical malpractice alone, reflecting negligence or inadvertence, does not constitute an eighth amendment violation. *Estelle* v. *Gamble*, supra, 429 U.S. 105–106. "[D]eliberate indifference" lies "somewhere between the poles of

negligence at one end and purpose or knowledge at the other . . . ." *Farmer* v. *Brennan,* supra, 511 U.S. 836; see also *Smith* v. *Carpenter,* supra, 316 F.3d 184. Deliberate indifference has been found in circumstances in which prison officials have disregarded the recommendations of a prisoner's treating physician; *Johnson* v. *Wright,* supra, 412 F.3d 404; and in circumstances in which prison officials have refused treatment for certain degenerative conditions. See *Harrison* v. *Barkley,* 219 F.3d 132, 138 (2d Cir. 2000) ("[i]t follows that (1) outright refusal of any treatment for a degenerative condition that tends to cause acute infection and pain if left untreated *and* (2) imposition of a seriously unreasonable condition on such treatment, both constitute deliberative indifference on the part of prison officials" [emphasis in original]).

The respondent argues that the court's conclusion that she was deliberately indifferent to the petitioner's serious medical condition was improper because the petitioner did not present any expert evidence demonstrating that the "appropriate standard of care" required prison officials to treat his condition differently or, specifically, to refer him to a specialist. The respondent argues that the only expert evidence with regard to this issue consisted of Blanchette's opinion that the petitioner "was not a surgical candidate" and that additional evaluation was not necessary. The respondent argues that the court improperly discredited Blanchette's expert opinion and concluded that "deliberate indifference" had been demonstrated in a case in which prison officials had a good faith basis on which to decline the petitioner's request for additional medical care.

In its findings, the court explicitly discussed Blanchette's opinion that the type of conservative treat-

ment[9] that had been provided to the petitioner was medically appropriate and that an evaluation by other specialists was not appropriate. The court stated that Blanchette was "not an expert in neurology or neurosurgery" and that Blanchette himself had not examined the petitioner. The court acknowledged that it was neither "an expert" nor in possession of expert evidence from any other expert witness. The court, however, discussed the medical reports that were in evidence and stated that "common sense" dictated that the evidence before it of degenerative disc disease, and the extent of such disease, demonstrated the existence of a medical condition that warranted further examination of the petitioner by a neurologist or a neurosurgeon.

As a preliminary matter, we disagree with the respondent's assertions that the court improperly chose not to rely on Blanchette's opinion. The court did not hold, as the respondent asserts, that Blanchette was incapable of rendering an expert opinion with regard to the issue of the petitioner's treatment. Instead, the court, in some measure, looked unfavorably on Blanchette's opinion of the petitioner's condition because Blanchette was not an "expert in neurology or neurosurgery." This determination, which reflected the court's careful evaluation of the evidence before it, was not improper. Certainly, the court was not required to accept as true the respondent's uncontradicted expert testimony. See *Doehrer* v. *Commissioner of Correction*, 68 Conn. App. 774, 784, 795 A.2d 548, cert. denied, 260 Conn. 924, 797 A.2d 520 (2002).

We also disagree with the respondent's assertion that the court's conclusion was improper because there was no expert evidence that supported it. The respondent asserts that deliberate indifference must "almost

[9] This treatment included prescription of muscle relaxants and pain medication, as well as advising the petitioner to rest.

always" be proven by expert medical testimony. The respondent likewise asserts that expert evidence was necessary to demonstrate that appropriate treatment of the petitioner's condition included the evaluations that the court deemed to be constitutionally mandated. Generally, "expert testimony is required when the question involved goes beyond the field of the ordinary knowledge and experience of judges or jurors . . . ." (Citations omitted; internal quotation marks omitted.) *Evans* v. *Warden*, 29 Conn. App. 274, 280, 613 A.2d 327 (1992). "Whether expert testimony is required in a particular case is determined on a case-by-case basis and its necessity is dependent on whether the issues are of sufficient complexity to warrant the use of the testimony as assistance to the habeas court. . . . It is the habeas court, therefore, that must initially decide whether, in order to make intelligent findings, it needs expert testimony on the question that it must decide. . . . A trial court has broad discretion in determining whether expert testimony is needed." (Internal quotation marks omitted.) *Torres* v. *Commissioner of Correction*, 84 Conn. App. 561, 567–68, 854 A.2d 97 (2004).

We conclude that the issues presented in this case were not so complex that the court's decision to resolve the issue before it on the basis of its "commonsense" view of the evidence reflected an abuse of discretion. The court had before it several reports that explained the physical characteristics of the petitioner's degenerative condition, as well as Blanchette's testimony concerning the condition. The court also had before it evidence concerning the extent of the treatment that the respondent provided to the petitioner and the effectiveness of such treatment. On the basis of this evidence, the court was able to exercise its judgment as to whether additional evaluation of the petitioner's condition was available and appropriate. The court did not order the respondent to perform specific medical

procedures on the petitioner; the court ordered the respondent to provide the petitioner with an evaluation by a specialist in neurology for the purpose of assessing the petitioner's condition and recommending any possible alternative treatment.

Insofar as expert testimony is concerned, it is necessary to distinguish between habeas cases alleging deliberate indifference and tort cases sounding in medical malpractice. In medical malpractice cases, competent expert testimony is almost always required to demonstrate the requisite standard of care or deviation therefrom. See, e.g., *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 567–68, 864 A.2d 1 (2005). The "medical appropriateness" of the treatment being afforded the petitioner was not the dispositive consideration of the court's inquiry in the present case. See *Olivier* v. *Robert L. Yeager Mental Health Center*, 398 F.3d 183, 191 n.7 (2d Cir. 2005). Rather the question raised before the habeas court was whether the respondent had been deliberately indifferent to the petitioner's serious medical needs. See id. In *Hathaway* v. *Coughlin*, supra, 37 F.3d 68, the United States Court of Appeals for the Second Circuit held that the absence of expert testimony, or a showing of at least medical malpractice, in an action alleging deliberate indifference to serious medical needs did not warrant dismissal of the action where the facts supported a finding of such indifference. The court explained: "The inquiry remains whether the treating physician or other prison official was deliberately indifferent to a prisoner's serious medical needs, not whether the doctor's conduct is actionable under state malpractice law." Id.

Although expert evidence in support of the petitioner's claim might have bolstered the petitioner's case, we are not persuaded that such testimony was required in this case. Further, we are persuaded that the court properly concluded that deliberate indifference had

been demonstrated in the present case. The court had before it evidence that the petitioner suffered from a serious medical condition. The October, 2003 MRI scan report disclosed that the petitioner's condition was evidenced by disc bulge, disc protrusion and disc disease. The evidence reflected that the petitioner frequently sought various forms of relief from the pain occasioned by his condition, from requests for accommodations such as an extra pillow to requests to be referred to a specialist. A March, 2000 "Diagnostic Radiologic Report" issued by a medical doctor at the University of Connecticut Health Center recommended that the petitioner undergo a bone scan and, possibly, a CT scan. The record reflects, however, that the respondent provided the petitioner with an MRI scan in October, 2003, only after the petitioner brought the results of his newly discovered 1992 CT scan to the court's attention. There is no evidence that the respondent has provided the petitioner with a bone scan.

The court made ample findings concerning (1) the fact that the treatment afforded to the petitioner had not alleviated his physical condition or the pain occasioned by it, (2) the extent and nature of the petitioner's disc condition and (3) the respondent's repeated refusal to provide the petitioner with the evaluative services of a neurologist or a neurosurgeon.[10] On the basis of these findings, we conclude that the petitioner demonstrated that the respondent possessed a culpable state

---

[10] In its findings, the court also stated that the respondent's refusal to afford the petitioner a neurological evaluation reflected "rigidity . . . ." The court compared the present case to another case in which it observed "rigidity" in the respondent's conduct—an unrelated case involving the respondent's classification of another prisoner as a "sex offender . . . ." The court's discussion of this wholly unrelated case, and its description of the respondent's conduct in that case, was improper. Although the court improperly referred to matters neither in evidence nor relevant to the matter at hand, there is no indication that the court's digression affected its resolution of the claim before it.

of mind. The court reasonably could have concluded that prison officials were aware of the pain being experienced by the petitioner and disregarded a substantial risk that the petitioner's painful condition would either continue or worsen under the admittedly "conservative" course of treatment being provided to him. The court reasonably could have inferred that the respondent's denials of the petitioner's repeated request for further medical evaluation or treatment reflected a reckless disregard for the petitioner's suffering and not, as the respondent asserts, merely the respondent's "good faith" medical decisions.

The judgment is affirmed.

In this opinion GRUENDEL, J., concurred.

SCHALLER, J., dissenting. The majority affirms the habeas court's oral ruling in which it determined that the respondent, the commissioner of correction, acted with deliberate indifference to the medical needs of the petitioner, William Faraday, in refusing to arrange the medical evaluation sought by the petitioner. I respectfully disagree because I believe that the court's findings and conclusions were unsupported by any evidence.

In order to grant habeas relief to a prisoner on the basis of deliberate indifference to inmate health or safety, the petitioner bears the burden of establishing both aspects of his claim. *Fuller* v. *Commissioner of Correction*, 75 Conn. App. 133, 136, 815 A.2d 208 (2003). First, the deprivation must be sufficiently serious such that the petitioner is denied the minimal civilized measure of life's necessities. Id. Second, the official must be shown to be culpable, that is, deliberately indifferent to health or safety. Id., 137. The majority has appropriately cited *Estelle* v. *Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), for the proposition that "[d]eliberate indifference to serious medical needs of

prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." (Citation omitted; internal quotation marks omitted.) Id., 104. A refusal to assent to an inmate's medical request, however, does not necessarily constitute "deliberate indifference," nor does every medical need amount to a "serious medical need." To the contrary, the term "serious medical need" refers specifically to "a condition of urgency . . . that may produce death, degeneration, or extreme pain"; (internal quotation marks omitted) *Hathaway* v. *Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996); and the term "deliberate indifference" has been interpreted to require conduct equaling criminal recklessness. *Hemmings* v. *Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998). Deliberate indifference, therefore, clearly does not contemplate good faith differences of opinion that cause officials to deny medical procedures or consultations. See *Estelle* v. *Gamble*, supra, 105–106 ("inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind' "); *Swindell* v. *Supple*, No. 02-3182, 2005 WL 267725, *8 (S.D.N.Y. 2005) ("A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment. . . . Nor is a denial of consultation with a specialist in itself an act of medical indifference." [Citations omitted; internal quotation marks omitted]).

On appeal, the respondent argues that the court made no finding of a "serious" deprivation and that, in fact, no such finding could be made on the basis of the evidence that was presented. The respondent further argues that even if the court had made a finding in 2003 that the petitioner's back pain constituted a serious medical condition, no evidence was presented to the court in 2005, nearly two years later, that the condition or the pain had persisted. The respondent also argues

that the petitioner failed to offer any evidence to establish deliberate indifference. I am persuaded on all scores.

At the first hearing before the court, held in 2003, the petitioner testified, but did not present any witnesses nor did he present any medical evidence. He sought a magnetic resonance imaging procedure (MRI), a surgery, a pass for a second pillow and a foam pad for his bed. As the majority notes, the petitioner attached a statement to his verified habeas petition, which he filed in 2002. All the allegations and claims made in the petition, however, were three years out of date by the time of the 2005 hearing. Moreover, the court had denied relief to the petitioner on the basis of the very same verified petition, including the attached statement. The respondent presented testimony by Edward Blanchette, the clinical director for the department of correction who was board certified in internal medicine and infectious disease. Although Blanchette acknowledged that the petitioner had degenerative joint disease in his back, which caused intermittent pain, he testified that the petitioner's condition could be managed effectively, as it had been in the past, with muscle relaxants and pain medication. Blanchette testified that neither an MRI procedure nor a surgical consultation was necessary. Because the pain was intermittent, surgery would not be appropriate. The court ruled orally in favor of the respondent, denying the petitioner's requests, apparently on the basis of Blanchette's testimony. One month later, the petitioner filed a motion for reargument, claiming that he had "new information or evidence . . . ." The new evidence turned out to be a 1992 computed tomography (CT) scan. Following a proceeding in federal court, the department of correction had an MRI procedure performed on the petitioner's back. The procedure confirmed the degenerative disk disease and found no evidence of any disc extrusion, thus confirm-

ing Blanchette's opinion. Thereafter, the court ordered a new hearing.

At the second evidentiary hearing, which was held in February, 2005, nearly two years after the first hearing, the petitioner presented several items of evidence.[1] One item consisted of the results of the 1992 CT scan that had been performed on him nearly thirteen years prior to the hearing; a second item consisted of the results of the October, 2003 MRI procedure performed on him approximately sixteen months prior. The petitioner offered no testimony, much less expert medical testimony. Significantly, no evidence was presented as to the petitioner's medical condition at the time of the second hearing. The respondent produced an affidavit of its medical expert, Blanchette, who had testified at length at the petitioner's first habeas hearing before the same court. Blanchette's sworn statement indicated that the October, 2003 procedure confirmed his earlier testimony that the petitioner was not a surgical candidate. Blanchette also explained the efforts that the respondent had engaged in to locate the 1992 CT scan.

Undeterred by the lack of evidence supporting the petitioner's claim, the court, while acknowledging that it was "not an expert" and that it did "not have the testimony or an affidavit from a neurologist or a neurosurgeon," offered its own "commonsense" analysis of the petitioner's condition on the basis of the earlier hearing testimony, on which it originally had denied relief, and the outdated diagnostic exhibits. While discounting Blanchette's testimony, on which it had relied before, because Blanchette was not a specialist in neurology or neurosurgery and had not done a "hands on"

---

[1] The petitioner entered into evidence (1) the results of a November 13, 1992 CT scan of his back; (2) a March 27, 2000 diagnostic radiological report about his spine; (3) a utilization review report from the utilization management unit of the University of Connecticut; (4) a summary of the October 15, 2003 MRI procedure; and (5) an April 16, 2003 hearing transcript.

physical examination, the court relied instead on *its own medical conclusions* concerning the petitioner's condition. Although failing to find a "serious medical condition" in specific terms, and lacking evidentiary support for any such finding, the court nonetheless decided that the respondent's refusal to comply with the petitioner's request for a surgical consultation constituted deliberate indifference to the petitioner's medical needs and ordered a consultation with a neurologist or neurosurgeon. The court cited no evidence of deliberate indifference, nor could it because none was offered, in reaching its conclusion. The sole evidence of the way the respondent had managed this situation was Blanchette's earlier testimony that neither surgery nor further evaluations were medically appropriate. Nonetheless, the court volunteered its personal opinion that the respondent was displaying "rigidity" by refusing to authorize a consultation. Reaching even further outside the record in this case, the court bolstered its speculation by stating that it had "seen this rigidity before in the case of Gregory Thomas versus respondent," an unrelated case concerning sex offender classification.

Because my examination of the record of this case reveals no evidence whatsoever supporting the court's findings and conclusions concerning the petitioner's medical condition in 2005 and no evidence whatsoever supporting its determination of deliberate indifference on the part of the respondent, I respectfully dissent from the majority opinion. The habeas court was not entitled to substitute its own speculation for the lack of any evidence to support its conclusions. I respectfully submit that the actions of the habeas court, in determining that the petitioner had a serious medical condition and that the respondent was culpable, on the basis of its personal views, without a shred of evidence in support, and in reliance on an entirely extraneous matter, was improper and should be reversed.

For the foregoing reasons, I respectfully dissent.