CARLTON E. JOLLEY *v.* COMMISSIONER OF
CORRECTION
(AC 26951)

Schaller, Gruendel and Lavine, Js.

Argued September 28—officially released December 5, 2006

*Carlton E. Jolley*, pro se, the appellant (petitioner).

*Neil Parille*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Henri Alexandre*, assistant attorney general, for the appellee (respondent).

*Opinion*

PER CURIAM. The petitioner, Carlton E. Jolley, appeals following the denial of certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner argues that the court (1) abused its discretion in denying his petition for certification to appeal and (2) improperly denied the habeas petition. We dismiss the appeal.

On April 1, 1989, the petitioner pleaded guilty to felony murder and was sentenced to forty-seven years incarceration. The petitioner did not appeal from his conviction. On September 1, 2004, acting pro se, he filed a petition for a writ of habeas corpus, alleging that the respondent, the commissioner of correction, provided him with "unacceptable" medical care. On

November 4, 2004, the respondent answered the petition, indicating that the petitioner was receiving appropriate medical treatment and that there had been no deliberate indifference to the petitioner's medical needs. After hearing two days of testimony, the court, on August 9, 2005, issued an oral decision denying the petition. The court concluded that the petitioner failed to establish that the respondent had been deliberately indifferent. On August 15, 2005, the petitioner sought certification to appeal, which was denied. This appeal followed. Additional facts will be set forth as necessary.

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . .

"In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling . . . [and] [r]eversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citation omitted; internal quotation

marks omitted.) *Greene* v. *Commissioner of Correction*, 96 Conn. App. 854, 856–57, 902 A.2d 701, cert. denied, 280 Conn. 916, 908 A.2d 536 (2006).

"When reviewing the decision of a habeas court, the facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Citations omitted; internal quotation marks omitted.) *Dwyer* v. *Commissioner of Correction*, 69 Conn. App. 551, 561–62, 796 A.2d 1212, cert. denied, 261 Conn. 906, 804 A.2d 212 (2002).

We now identify the constitutional principles relevant to the petitioner's appeal. "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. . . . The Amendment also imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates . . . .

"In *Estelle* v. *Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), the United States Supreme Court concluded: [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment. . . .

"These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. . . . The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself. . . .

"A prisoner seeking habeas relief on the basis of his conditions of confinement, which includes the medical care made available to him, bears the burden of establishing both aspects of his claim. First, the alleged deprivation of adequate conditions must be objectively, sufficiently serious . . . such that the petitioner was denied the minimal civilized measure of life's necessities. . . . Second, the official involved must have had a sufficiently culpable state of mind described as deliberate indifference to inmate health or safety." (Citations omitted; internal quotation marks omitted.) *Faraday* v. *Commissioner of Correction*, 95 Conn. App. 1, 6–8, 894 A.2d 1048, cert. granted on other grounds, 279 Conn. 907, 901 A.2d 1225 (2006).

In the present case, the petitioner claims that he was denied access to certain diagnostic tests, such as an endoscopy, a colonoscopy and a magnetic resonance imaging examination of his back, that could not be performed at the correctional institution in which he was incarcerated. He further contends that a specialist at the gastrointestinal clinic (clinic) at the University of Connecticut School of Medicine recommended these procedures and that it was improper for the university's

utilization review committee (committee)[1] to deny him access to these tests. The committee concluded, after reviewing the petitioner's entire medical record, that such procedures were not warranted.[2] The court found that despite the petitioner's disagreement with the course of treatment, the respondent was not deliberately indifferent to his medical condition.

There was ample evidence in the record to support the court's finding. The respondent provided the petitioner with multiple blood tests, X rays, physical examinations and two consultations at the clinic. To the extent that recommendations made by the specialist were not followed, the court heard evidence explaining why such treatments were denied. Mark Buchanan, a physician and member of the committee, stated that after reviewing the entire medical file, he determined that the petitioner was not suffering from a serious medical condition. He acknowledged the recommendations made from the clinic, but testified that the petitioner had misrepresented some of his symptoms, including weight loss and the amount of pain he was in, to the specialist. Furthermore, unlike the specialist, Buchanan had the opportunity and ability to review the petitioner's entire medical file. Although some of the petitioner's blood test or X ray results were slightly abnormal, these results were not "clinically significant." The physicians who testified did not believe the petitioner's subjective views regarding his claims of constant, excruciating and debilitating pain.[3] The court stated in its decision: "Again, it is significant to this court and highly relevant that there is no objective

---

[1] Timothy R. Silvis, the principal physician at the MacDougall-Walker Reception/Special Management Unit, testified that the committee reviews requests for procedures that must be performed outside of the facility.

[2] The court specifically credited the testimony of the physicians who testified.

[3] The court heard testimony that the petitioner worked in the prison gym, exercised and lifted weights. Furthermore, the court observed the petitioner during his trial and stated that he did not exhibit any signs of distress.

manifestation of physical pain, and objective testing results have yielded no significant abnormality in the petitioner's physical condition."

In *Estelle,* the United States Supreme Court stated: "But the question whether an X-ray—or additional diagnostic techniques or forms of treatment—is indicated is a classic example of a matter for medical judgment. *A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.*" (Emphasis added.) *Estelle* v. *Gamble,* supra, 429 U.S. 107. In the present case, the respondent provided the petitioner with care that the court described as "responsive as is appropriate, perhaps above and beyond the call of duty . . . ." Although the specialist recommended that certain additional tests be performed, the committee, with its superior knowledge of the petitioner's medical history and in its exercise of medical judgment, determined that such tests were unwarranted. The court acted well within its discretion in finding that the respondent was not deliberately indifferent to the petitioner. We conclude that the petitioner has failed to establish that the issue is debatable among jurists of reason, that a court could resolve the issue in a different manner or that the question presented is adequate to deserve encouragement to proceed further. Accordingly, the court did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.