## WILLIAM FARADAY *v.* COMMISSIONER OF CORRECTION
## (SC 17694)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.*

* The listing of justices reflects their seniority status as of the date of oral argument.

Argued February 13, 2007—officially released August 12, 2008

*Neil Parille*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Henri Alexandre*, assistant attorney general, for the appellant (respondent).

*Kim Coleman*, with whom, on the brief, was *Erin M. Kallaugher*, for the appellee (petitioner).

*Opinion*

PALMER, J. Under *Estelle* v. *Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), prison officials will be found to have violated the eighth amendment to the United States constitution[1] if, by virtue of their deliberate indifference to an inmate's serious medical needs, they refuse to provide care or treatment to that inmate. The petitioner, William Faraday, filed a petition for a writ of habeas corpus, claiming that the respondent, the commissioner of correction, had violated his eighth amendment rights by refusing to provide him with certain medical care for a chronic back condition. The habeas court rendered judgment granting the petition, and the Appellate Court, with one judge dissenting, affirmed the judgment of the habeas court. *Faraday* v. *Commissioner of Correction*, 95 Conn. App. 1, 19, 894 A.2d 1048 (2006). On appeal following our grant of certification,[2] the respondent claims that the Appellate Court improperly affirmed the judgment of the habeas court because the evidence was insufficient to support that court's finding that the respondent had been deliber-

---

[1] The eighth amendment to the United States constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

[2] We granted the respondent's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly affirm the trial court's grant of the writ of habeas corpus?" *Faraday* v. *Commissioner of Correction*, 279 Conn. 907, 908, 901 A.2d 1225 (2006).

ately indifferent to the petitioner's medical needs. We agree with the respondent and, accordingly, reverse the judgment of the Appellate Court.

The following relevant facts and procedural history are set forth in the opinion of the Appellate Court. "The petitioner pleaded guilty . . . to sexual assault in the third degree and risk of injury to a child. Following the trial court's imposition of a sentence in accordance with the plea,[3] the petitioner was charged with violating two conditions of his probation. The [trial] court concluded that the petitioner had violated both conditions, revoked the petitioner's probation and ordered the petitioner to serve the twelve year sentence originally imposed. [See footnote 3 of this opinion. This court] upheld the [trial] court's judgment. *State* v. *Faraday*, 268 Conn. 174, [207] 842 A.2d 567 (2004).

"In December, 2002, the petitioner filed a petition for a writ of habeas corpus.[4] The petitioner alleged that the conditions of his confinement were inhumane or dangerous to him because the respondent denied him necessary medical care for a back condition. The petitioner alleged, inter alia, that a magnetic resonance [image] (MRI) . . . of his back and an operation to repair herniated discs in his back were medically necessary, and that the respondent had denied his requests for the same." *Faraday* v. *Commissioner of Correction*, supra, 95 Conn. App. 3.

In April, 2003, the habeas court conducted an evidentiary hearing on the petition. At the hearing, the petitioner testified that, approximately ten years earlier, he had undergone an MRI of his lower back, which indicated that he suffered from a herniated disc. The petitioner further testified that, although he had been un-

---

[3] The trial court sentenced the defendant to a term of twelve years imprisonment, execution suspended, and five years probation.

[4] The petitioner filed the petition pro se.

successful in obtaining a copy of the results of the MRI, he did recall that the MRI had been ordered by a physician by the name of Geiter, who had done so as a favor to another physician who had been treating the petitioner for an unrelated medical condition. The petitioner did not present any other witnesses or medical evidence.

The respondent presented the testimony of Edward Blanchette, the clinical director of medicine of the department of correction. Blanchette, a physician with approximately thirty years experience and who is board certified in internal medicine and infectious disease, testified that an MRI of the lower back is medically required only when neurological findings indicate that the patient is a candidate for surgery. Blanchette further testified that, on the basis of his evaluation of the petitioner's medical records, the petitioner met none of the criteria for back surgery, and, therefore, he was not a candidate for an MRI. Blanchette also testified that the petitioner had been evaluated by a number of physicians, including several with expertise in orthopedics, and all of them agreed that the petitioner "is not someone [who] requires an MRI of his back or surgery . . . ." Blanchette explained that, by the petitioner's own admission, his back pain "comes and goes," that the petitioner would be suffering from persistent pain and discomfort if he had a herniated disc requiring surgery, and that the medically appropriate treatment for the petitioner's intermittent discomfort is muscle relaxants, pain medication and bed rest to alleviate the symptoms.[5] Blanchette further stated that the petitioner suffered from no muscle atrophy or reflex asymmetry, that there was nothing to indicate that the petitioner required surgical intervention, and that the petitioner had responded favorably to conservative treatment.

[5] We note that the petitioner never has disputed Blanchette's description of the petitioner's pain or symptoms.

Finally, Blanchette testified that he would authorize an MRI or a neurological consultation if such action became medically necessary due to a change in the petitioner's condition.[6]

Following up on the petitioner's testimony that he had been unable to obtain a copy of the results of the MRI that had been performed on him approximately ten years earlier, the habeas court asked Blanchette whether he had consulted with the physician who purportedly had ordered the MRI. Blanchette testified that he personally had contacted the physician whom the petitioner originally identified as having ordered the MRI, but that physician had no record of treating the petitioner. Blanchette further testified that he also had requested the petitioner's medical records from the two hospitals at which the petitioner had claimed to have received treatment for his back, namely, Manchester Memorial Hospital and Saint Francis Hospital and Medical Center. Neither hospital, however, had any record of an MRI having been performed on the petitioner. Blanchette also stated that, prior to the hearing on the habeas petition, the petitioner never had mentioned a physician named Geiter.

When the habeas court asked Blanchette whether it would be worthwhile to attempt to locate Geiter, Blanchette responded that, although it might be interesting to know the results of the MRI that purportedly

[6] Blanchette also explained that disc-related problems frequently are associated with the aging process, and X rays had revealed that the petitioner's chronic back condition could be associated with degenerative joint disease. Blanchette further testified that surgery does not always relieve the pain and discomfort caused by such back problems, and, in fact, sometimes those symptoms are more severe following surgery. Blanchette stated that, for this reason, disc surgery generally is performed only "under certain conditions," none of which was present in the petitioner's case. In addition, Blanchette observed that, according to the petitioner's medical records, he had not complained of back pain for some time even though he had been admitted to the prison infirmary for other reasons.

had been performed on the petitioner ten years earlier, those results would have no bearing on Blanchette's opinion with respect to the petitioner's care and treatment. Blanchette explained that, even if the MRI indicated that the petitioner had a herniated disc, in light of his present symptoms, the petitioner still would not be a candidate for another MRI or for surgery, and, consequently, there would be no reason to order a neurosurgical consultation. Finally, Blanchette testified that the treatment that the petitioner was receiving for his back pain comported fully with accepted medical standards.

At the conclusion of the hearing, the habeas court issued an oral decision rejecting the petitioner's claim that the respondent had been deliberately indifferent to the petitioner's medical needs. Expressly crediting Blanchette's expert testimony, the court concluded that neither an MRI nor disc surgery was necessary. Accordingly, the court dismissed the petition.

Thereafter, the petitioner filed a motion for reconsideration. In support of his motion, the petitioner alleged that, subsequent to the dismissal of his habeas petition, he had obtained a report detailing the results of a 1992 computed tomographic (CT) scan which, according to the petitioner, substantiated his claim that he suffered from a herniated disc. In May, 2003, the habeas court granted the petitioner's motion, and, in February, 2005, the court conducted a second evidentiary hearing on the petition.[7] The petitioner did not testify at the hearing but introduced into evidence a transcript of his testimony at the earlier proceeding. The petitioner also introduced into evidence the results of the 1992 CT scan and, in addition, the results of an MRI that had been performed on October 15, 2003, following the first

[7] The petitioner was represented by counsel at the hearing on his motion for reconsideration.

hearing.[8] The 1992 report detailing the results of the CT scan indicated that the petitioner suffered from "a central and right sided herniated migrated disc" at the L5-S1 (fifth lumbar and first sacral) vertebrae, which are located in the lower back. The diagnostic report detailing the findings of the 2003 MRI indicated that the petitioner suffered from "[d]egenerative disc disease with mild diffuse disc bulge at L4-5 [fourth and fifth lumbar vertebrae]" and "[s]mall central disc protrusion with degenerative disc disease at L5-S1," and that there was "[n]o evidence of any disc extrusion . . . ."[9]

Blanchette did not testify at the second hearing, but the respondent introduced Blanchette's affidavit into evidence. In the affidavit, Blanchette stated that the 2003 MRI confirmed his original determination that the petitioner was not a candidate for surgery. Blanchette specifically stated in the affidavit: "With respect to an MRI, it was my opinion [at the April, 2003 hearing] that this was unnecessary for pre-surgical evaluation given that [the petitioner] was not a surgical candidate in view of [the] clinical findings. Since multiple past X rays had documented only mild to moderate degenerative

[8] In his brief filed with this court, the petitioner asserts that the 2003 MRI had been performed at the direction of the department of correction in response to an action that he had filed in the United States District Court for the District of Connecticut in September, 2003, alleging a violation of 42 U.S.C. § 1983. According to the petitioner, his federal action and the present action are based on the same essential allegation, that is, the respondent's purportedly deliberate indifference to the petitioner's medical needs.

[9] The petitioner also introduced into evidence two other documents, namely, a "Diagnostic Radiologic Report" dated March 27, 2000, from the department of radiology at the University of Connecticut Health Center, and a "Utilization Review Report" dated May 22, 2002, from the correctional managed health care utilization review committee of the University of Connecticut Health Center. The radiologic report stated that "there is no fracture or dislocation seen" but recommended that the petitioner undergo a bone scan and, possibly, a CT scan, "to rule out [any] underlying destructive process involving the left pedicle of the L-5 [(fifth lumbar) vertebra]." The utilization review report recommended that the petitioner begin a back exercise program.

joint disease with no clinically significant disc herniation, an MRI was not needed for diagnostic considerations. A subsequent MRI that was done on October 15, 2003, confirmed my clinical impression."

Following the close of evidence, the respondent asserted that the evidence supported only one conclusion, that is, that the respondent had been treating the petitioner's back condition in a medically appropriate manner. The respondent further noted that, several months earlier, the petitioner had been provided with a copy of the 2003 MRI for the purpose of having it evaluated by a medical expert, but the petitioner had failed to obtain such an evaluation. According to the respondent, the record was devoid of evidence that the care and treatment that the petitioner received was inadequate or inappropriate, let alone that the respondent had demonstrated deliberate indifference to the petitioner's medical needs.

In an oral decision following the parties' arguments, the habeas court granted the petition. The habeas court expressed "great respect" for Blanchette, but noted that Blanchette was not an expert in neurology or neurosurgery and that he never had performed a "hands-on physical examination of the petitioner." The habeas court also observed that, although the petitioner had failed to adduce the testimony or affidavit of a medical expert, "common sense" led the court to conclude that the petitioner needed a further evaluation of his back. Specifically, the habeas court stated: "I have the [1992 CT scan results] which [talk] about a disc herniation at the [fifth lumbar and first sacral vertebrae], and the 2003 [MRI] report talks about the disc protrusion with degenerative disc disease at [that same location]. So the two track each other. . . . And based [on] that, there is sufficient evidence, in [the] court's view, to have a neurological evaluation by a neurologist or a neurosurgeon . . . of the petitioner." In reaching its conclusion, the

habeas court also observed that "it is not a major thing to have [the petitioner] examined and evaluated by a neurologist or a neurosurgeon, who, in addition to reviewing [the relevant] documents, will be able to conduct a . . . physical examination [of the petitioner]." The habeas court further noted that the respondent's "failure to do so or the refusal to do so seems to [represent] rigidity by the [respondent] that is unnecessary," a rigidity that, according to the court, the respondent had demonstrated in another, unrelated habeas case.[10] Finally, the court concluded that, because of the "substantial probability that the petitioner has a herniated disc," the respondent's refusal to grant the petitioner's request for an examination by a specialist reflected her "deliberate indifference to the [petitioner's] medical needs . . . ." The court thereupon directed the respondent "to have the petitioner evaluated for his disc or back problem by a neurosurgeon or a neurologist to determine what course of action should be taken, if any." The court subsequently granted the respondent's petition for certification to appeal.

On appeal to the Appellate Court, the respondent claimed that the habeas court improperly had ordered

---

[10] After characterizing the respondent's refusal to provide the petitioner with an evaluation by a neurologist or neurosurgeon as unnecessarily rigid, the habeas court made the following observations with respect to that other, unrelated habeas case: "I have seen this rigidity before in [another] case . . . in which the petitioner [in that case] has been labeled as a sex offender, yet he was acquitted in a jury trial of being a sex offender or sexual assault one, and the [respondent's] own classification manual states that any charge for which a prisoner or an inmate . . . has been acquitted or the [charge has] been dismissed shall not be considered in classification of the prisoner. And yet the [respondent] insists on categorizing this [other] individual . . . as a sex offender or having sex offender [treatment] needs, which, as far as I'm concerned, is the same thing. And even though this court had denied a motion to dismiss, finding that there is a liberty interest on behalf of [this other individual] by [his] . . . not being labeled as a sex offender, the [respondent] insists that it is correct and, regardless of its own regulations, insists on its position. And that, to me, is rigidity which is unnecessary and improper."

her to provide the petitioner with an evaluation by a neurologist or a neurosurgeon because (1) the habeas court did not make a finding that the petitioner suffered from a serious medical condition, (2) even if the habeas court had made such a finding, it was not supported by the evidence, and (3) the evidence was inadequate to establish that the respondent had demonstrated deliberate indifference to the medical needs of the petitioner. *Faraday* v. *Commissioner of Correction,* supra, 95 Conn. App. 8, 13. The Appellate Court, with one judge dissenting, rejected the respondent's claims and affirmed the judgment of the habeas court. Id., 19.

With respect to the respondent's contention that the evidence was inadequate to support the habeas court's finding of deliberate indifference, the Appellate Court majority determined that the evidence of the petitioner's condition, coupled with the respondent's refusal to provide him with an evaluation by a neurologist or a neurosurgeon, was sufficient to warrant the habeas court's conclusion.[11] In reaching its determination, the Appellate Court majority stated that the habeas court had acted within its discretion in "look[ing] unfavorably" on Blanchette's evaluation of the petitioner's condition because Blanchette was not an expert in neurology or neurosurgery. Id., 15. The Appellate Court majority further explained that the issues presented by the petitioner's claim were not so complex as to require expert testimony concerning the nature of the care and treatment that the petitioner needed, and, therefore, the habeas court reasonably had relied on its "common-sense view of the evidence" in concluding that the respondent's handling of the petitioner's back condition

---

[11] For purposes of this appeal, and in light of our conclusion that the Appellate Court majority improperly determined that the evidence supported the habeas court's finding of deliberate indifference, we assume without deciding that the habeas court correctly concluded that the petitioner's back ailment constitutes a serious medical condition.

satisfied the deliberate indifference standard. (Internal quotation marks omitted.) Id., 16. Specifically, the Appellate Court majority stated: "The [habeas] court made ample findings concerning (1) the fact that the treatment afforded to the petitioner had not alleviated his physical condition or the pain occasioned by it, (2) the extent and nature of the petitioner's disc condition and (3) the respondent's repeated refusal to provide the petitioner with the evaluative services of a neurologist or a neurosurgeon. On the basis of these findings, we conclude that the petitioner demonstrated that the respondent possessed a culpable state of mind. The [habeas] court reasonably could have concluded that prison officials were aware of the pain being experienced by the petitioner and disregarded a substantial risk that the petitioner's painful condition would either continue or worsen under the admittedly 'conservative' course of treatment being provided to him. The [habeas] court reasonably could have inferred that the respondent's denials of the petitioner's repeated request for further medical evaluation or treatment reflected a reckless disregard for the petitioner's suffering and not, as the respondent asserts, merely the respondent's 'good faith' medical decisions." Id., 18–19.

Judge Schaller dissented, concluding, inter alia, that there was "no evidence whatsoever supporting [the habeas court's] determination of deliberate indifference on the part of the respondent . . . ." Id., 23 (Schaller, J., dissenting). Judge Schaller explained: "The [habeas] court cited no evidence of deliberate indifference, nor could it because none was offered, in reaching its conclusion. The sole evidence of the way the respondent had managed this situation was Blanchette's earlier testimony that neither surgery nor further evaluations were medically appropriate. Nonetheless, the [habeas] court volunteered its personal opinion that the respondent was displaying rigidity by refusing to authorize a

consultation. Reaching even further outside the record in this case, the court bolstered its speculation by stating that it had seen this rigidity before in . . . an[other] unrelated case concerning sex offender classification." (Internal quotation marks omitted.) Id. We agree with Judge Schaller that the record does not support the habeas court's conclusion that the respondent acted with deliberate indifference to the petitioner's medical needs by refusing to have him examined by a neurologist or neurosurgeon.

We begin our analysis with the standard of review. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citation omitted.) *Duperry* v. *Solnit*, 261 Conn. 309, 335, 803 A.2d 287 (2002).

"The [e]ighth [a]mendment prohibits the infliction of cruel and unusual punishments. U.S. Const. amend VIII. This includes punishments that involve the unnecessary and wanton infliction of pain. *Gregg* v. *Georgia*, 428 U.S. 153, 173 [96 S. Ct. 2909], 49 L. Ed. 2d 859 (1976). In order to establish an [e]ighth [a]mendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to [his] serious medical needs. *Estelle* v. *Gamble*, [supra, 429 U.S. 104]. The standard of deliberate indifference includes both subjective and objective components. First, the alleged deprivation must be, in objective terms, sufficiently serious. *Hathaway* v. *Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) [cert. denied sub nom. *Foote* v. *Hathaway*, 513 U.S. 1154, 115 S. Ct. 1108, 130 L. Ed. 2d 1074 (2005)] . . . . Second, the [government official] must act with a sufficiently culpable state of mind. Id. An official acts with the requisite deliberate indifference when that official

knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer* v. *Brennan*, 511 U.S. 825, 837 [114 S. Ct. 1970], 128 L. Ed. 2d 811 (1994)."[12] (Internal quotation marks omitted.) *Chance* v. *Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Thus, "an official's failure to alleviate a significant risk that he should have perceived but did not [does not violate the eighth amendment]." *Farmer* v. *Brennan*, supra, 838.

Accordingly, to establish a claim of deliberate indifference in violation of the eighth amendment, a prisoner must prove that the officials' actions constituted "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley* v. *Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986). " '[D]eliberate indifference' is a stringent standard of fault"; *Board of the County Commissioners* v. *Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); requiring proof of "a state of mind that is the equivalent of criminal recklessness." (Internal quotation marks omitted.) *Hernandez* v. *Keane*, 341 F.3d 137, 144 (2d Cir. 2003), cert. denied, 543 U.S. 1093, 125 S. Ct. 971, 160 L. Ed. 2d 905 (2005); see *Farmer* v. *Brennan*, supra, 511 U.S. 839–40 ("subjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the [c]ruel and [u]nusual [p]unishments [c]lause . . . and we adopt it as the test for 'deliberate indifference' under the [e]ighth [a]mendment"). Consequently, "a complaint that a physician has been negligent in

---

[12] With respect to the objective component of the deliberate indifference standard, the term "sufficiently serious" has been described as "a condition of urgency, one that may produce death, degeneration, or extreme pain." (Internal quotation marks omitted.) *Hathaway* v. *Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). As we have indicated; see footnote 11 of this opinion; we assume that the petitioner's chronic back condition satisfies this component of the test.

diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the [e]ighth [a]mendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle* v. *Gamble*, supra, 429 U.S. 106. In other words, "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance* v. *Armstrong*, supra, 143 F.3d 703. "At the same time, however, while mere medical malpractice is not tantamount to deliberate indifference, certain instances of medical malpractice may rise to the level of deliberate indifference; namely, when the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." (Internal quotation marks omitted.) Id.

Finally, in defending against a claim of deliberate indifference, "[p]rison officials may . . . introduce proof that they were not . . . aware [that a substantial risk of harm existed], such as testimony that 'they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.' [*Farmer* v. *Brennan*, supra, 511 U.S. 844]. Thus, in *Johnson* v. *Wright*, 412 F.3d 398, 404 (2d Cir. 2005), [the Second Circuit Court of Appeals] held that a jury could infer the absence of a sufficiently culpable state of mind if the jury believed that the defendant denied the plaintiff medical treatment 'because the defendant . . . sincerely and honestly believed . . . that applying [a prison policy mandating the denial of treatment] was, in [the] plaintiff's case, medically justifiable.' . . . The defendant's belief that his conduct poses no risk of serious harm (or an insubstantial risk of serious harm) need not be sound [as] long as it is sincere. Thus, even if objectively unreasonable, a defendant's mental state may be nonculpable." (Cita-

tion omitted.) *Salahuddin* v. *Goord*, 467 F.3d 263, 281 (2d Cir. 2006).

Applying these principles to the present case, we conclude that the habeas court reasonably could not have found that the respondent was deliberately indifferent to the petitioner's serious medical needs. First, the record does not support the conclusion that the care and treatment that Blanchette recommended did not meet applicable medical standards. We acknowledge that an inmate seeking to establish an eighth amendment violation is not always required to present evidence that his treatment fell below the requisite standard of care because, even without such testimony, the facts may be sufficiently compelling to permit a finding of deliberate indifference by prison officials. See, e.g., *Hathaway* v. *Coughlin*, supra, 37 F.3d 68. Contrary to the determination of the Appellate Court majority, however, we conclude that this is not such a case. We therefore disagree with the Appellate Court majority that the habeas court, after comparing the results of the 1992 CT scan and the 2003 MRI, reasonably relied on its own "common sense" in concluding that the petitioner's back condition was so severe that an evaluation by a neurologist or a neurosurgeon was necessary to determine whether surgery was required. We simply do not accept the petitioner's claim that that evidence so clearly and unequivocally indicated the need for such an evaluation that the habeas court reasonably could have found that Blanchette's refusal to order it was improper. In other words, we are not persuaded that the habeas court was qualified, on the basis of the evidence presented, to render its own opinion that such an evaluation was medically necessary.

The petitioner, moreover, had ample opportunity to seek to demonstrate the need for an evaluation by a neurologist or neurosurgeon. For example, several months before the hearing on the petitioner's motion

for reconsideration, counsel for the petitioner had been provided a copy of the results of the petitioner's 2003 MRI so that the petitioner could have it evaluated by an expert. For whatever reason, the petitioner never presented any testimony, by way of affidavit or otherwise, from such an expert. Having failed to produce evidence tending to establish that the care he received was medically inappropriate, the petitioner cannot prevail on his claim that the respondent's conduct was constitutionally inadequate.

Furthermore, although the habeas court was not required to credit the testimony of Blanchette, the court could not have concluded that Blanchette had failed to adhere to accepted medical standards merely because the court was unpersuaded by Blanchette's testimony. See, e.g., *Paige* v. *St. Andrew's Roman Catholic Church Corp.*, 250 Conn. 14, 18, 734 A.2d 85 (1999) ("it is well established that, although the [fact finder] is entitled to disbelieve any evidence, it may not draw a contrary inference on the basis of that disbelief"). The petitioner bore the burden of proving his claim that the care and treatment he received lay "somewhere between the poles of negligence at one end and purpose[ful] or know[ing] [conduct] at the other"; *Farmer* v. *Brennan*, supra, 511 U.S. 836; and, as we have explained, in the absence of any explanatory expert testimony, the various diagnostic tests that had been performed on the petitioner over the years were not sufficiently clear or definitive with respect to the extent and severity of his back ailment to permit a finding by the habeas court that an examination by a neurologist or neurosurgeon was required.

This determination leads inexorably to the conclusion that the evidence did not warrant the habeas court's finding that Blanchette had consciously disregarded an excessive risk to the petitioner's health. In the absence of evidence sufficient to support a finding

that Blanchette had failed to care for and to treat the petitioner's back condition adequately, there can be no basis to conclude that Blanchette was "aware of facts from which the inference could be drawn that a substantial risk of serious harm [to the petitioner] exist[ed]" and that Blanchette actually "dr[ew] the inference." Id., 837.

Indeed, the record is devoid of evidence to suggest that Blanchette did not "sincerely and honestly [believe] . . . that [the conservative treatment being afforded the petitioner] was, in [the petitioner's] case, medically justifiable." (Internal quotation marks omitted.) *Salahuddin* v. *Goord*, supra, 467 F.3d 281. In fact, as we have noted, the habeas court expressed "great respect" for Blanchette, who, the habeas court observed, had testified before that court "many times . . . ." Thus, even if the evidence was sufficient to establish that Blanchette's care and treatment of the petitioner had been inadequate, there was no evidence indicating that Blanchette *knew* that his refusal to have the petitioner examined by a specialist created an undue risk of serious harm to the petitioner. For this reason, as well, the habeas court's finding of deliberate indifference cannot stand.

Finally, to the extent that the evidence suggested that an examination by a neurologist or neurosurgeon might be useful or beneficial, that fact alone is insufficient to demonstrate an eighth amendment violation. As the United States Supreme Court explained in *Estelle*, "the question whether an X-ray—or additional diagnostic techniques or forms of treatment—is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state [civil] court . . . ." *Estelle* v. *Gamble*, supra, 429 U.S. 107. "[T]o the extent that [a prisoner] alleges

that he was not properly treated, or that he disagreed with the treatment given him . . . that conduct does not rise to the level of a constitutional violation. Courts have repeatedly held that an omission of this nature does not amount to a constitutional violation . . . and disagreements between a prisoner and prison officials over treatment decisions fall short of cruel and unusual punishment. Thus, disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for [an eighth amendment] claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the [e]ighth [a]mendment." (Citation omitted.) *Sonds v. St. Barnabas Hospital Correctional Health Services*, 151 F. Sup. 2d 303, 312 (S.D.N.Y. 2001).

It is apparent that the habeas court was frustrated by what it believed was the respondent's stubborn and unreasonable refusal to agree to have the petitioner examined by a neurologist or a neurosurgeon. This frustration is reflected in the habeas court's reference to a wholly unrelated case in which, according to the habeas court, the respondent had taken a similarly rigid position in connection with the request of an inmate.[13] See footnote 10 of this opinion. The habeas court's belief that the respondent should have acceded to what that court viewed as the petitioner's reasonable request for an examination by a neurologist or neurosurgeon, however, is insufficient to support the court's finding of an eighth amendment violation. "The [c]onstitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves

---

[13] As the Appellate Court majority acknowledged; *Faraday v. Commissioner of Correction*, supra, 95 Conn. App. 18 n.10; the habeas court's reference to this other, unrelated case was improper because that case bore no relevance to the present case.

. . . ." (Internal quotation marks omitted.) *Dean* v. *Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). It is well established, moreover, "that mere disagreement over the proper treatment does not create a constitutional claim. [As] long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an [e]ighth [a]mendment violation." *Chance* v. *Armstrong*, supra, 143 F.3d 703.

For the foregoing reasons, we conclude that the evidence does not support the finding of the habeas court that the respondent's refusal to provide the petitioner with an examination by a neurologist or a neurosurgeon constituted a violation of the eighth amendment's proscription against cruel and unusual punishment. The Appellate Court, therefore, improperly affirmed the habeas court's judgment.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the habeas court and to remand the case to that court with direction to render judgment dismissing the petition for a writ of habeas corpus.

In this opinion the other justices concurred.