******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ERNEST FRANCIS *v.* CORRECTION
OFFICER BRIATICO ET AL.*
(AC 44192)

Bright, C. J., and Alvord and Palmer, Js.

*Syllabus*

The plaintiff, an inmate in a state correctional institution, sought, inter alia, to recover damages, pursuant to federal law (42 U.S.C. § 1983), from the defendants, three current or former employees of the Department of Correction, in their individual capacities, for the alleged violation of his constitutional rights in connection with injuries he allegedly sustained during a fire in his housing unit. An electrical fire occurred in a different cell in the plaintiff's housing unit, and the plaintiff, who was not evacuated from his cell during the three minutes between when the fire was reported and was declared extinguished, claimed that he suffered from smoke inhalation as well as labored breathing and mental trauma following the incident. The trial court granted the defendants' motion for summary judgment, finding that the facts alleged by the plaintiff were insufficient to demonstrate malevolent intent by the defendants as required for purposes of proving an eighth amendment violation pursuant to *Whitley* v. *Albers* (475 U.S. 312). The plaintiff appealed to this court, claiming that the trial court should have applied the deliberate indifference test adopted in *Estelle* v. *Gamble* (429 U.S. 97). *Held* that the trial court correctly concluded that the defendants were entitled to summary judgment, as the facts alleged by plaintiff did not give rise to a triable issue for determination by the fact finder under even the lesser deliberate indifference standard: the defendants did not consciously disregard a substantial risk of serious harm to the plaintiff, as they responded immediately to the fire, which was confined to a single cell that the plaintiff was not occupying, the fire was extinguished within three minutes of being reported, and the plaintiff was afforded medical attention within minutes after the fire was extinguished and demonstrated no serious ill effects; moreover, the defendants were justified in not evacuating the plaintiff or other potentially affected inmates for safety and security reasons, as there were ninety-two inmates in the unit and the staff was beginning a shift change when the fire was discovered.

Argued February 15—officially released August 2, 2022

*Procedural History*

Action to recover damages for, inter alia, the alleged violation of the plaintiff's federal constitutional rights, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Wahla, J.*, granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Ernest Francis*, self-represented, the appellant (plaintiff).

*Zenobia Graham-Days*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Clare Kindall*, solicitor general, for the appellee (defendants).

*Opinion*

PALMER, J. The self-represented plaintiff, Ernest Francis, appeals from the summary judgment rendered by the trial court in favor of the defendants, Captain Bryan Viger,[1] Lieutenant Wilkens and Correction Officer Briatico, all current or former employees of the Department of Correction (department). The plaintiff brought this action pursuant to 42 U.S.C. § 1983,[2] alleging that the defendants violated his rights under the eighth amendment to the United States constitution[3] by virtue of the manner in which they responded to an electrical fire in the plaintiff's housing unit at the Cheshire Correctional Institution (Cheshire), where he was incarcerated.[4] On appeal, he contends that the court applied an unduly exacting legal standard—one that required him to prove that the defendants had acted in bad faith and with the malicious intent to harm him—in holding that the defendants' conduct did not violate the eighth amendment as a matter of law. Because we conclude that the court correctly determined that the defendants are entitled to summary judgment, we affirm the judgment.

The record before the trial court reveals the following relevant facts and procedural history. On August 8, 2013, at 2:45 p.m., an electrical outlet in cell 142 of the housing unit at Cheshire known as North Block 1 malfunctioned and caught fire. Although the plaintiff's cell was located in North Block 1, the fire was not in his cell. As soon as they became aware of the fire, the two inmates assigned to that cell began banging on the cell door and yelling. Correction Officer Briatico responded immediately and called a "code red," thereby bringing the incident to the attention of other officers and staff, including Captain Viger and Lieutenant Wilkens, who also responded. Fire extinguishers were used to put out the fire, which was limited to sparks and smoke coming out of an electrical outlet within one cell, and exhaust fans were deployed for ventilation purposes. The fire was quickly extinguished, and Viger cleared the code at approximately 2:48 p.m. The facility returned to normal operation at about 3 p.m.

Medical staff evaluated all inmates assigned to North Block 1, and the plaintiff was so assessed at 3:10 p.m. On the basis of that assessment, and because the plaintiff demonstrated no serious ill effects following a short period of observation, he returned to the unit.

At the time of the fire, there were ninety-two inmates in North Block 1. As occurs each day, there was a scheduled shift change of department staff at 2:45 p.m., marking the end of the first shift and the beginning of the second. In addition, a daily, facility wide headcount of inmates was scheduled to be conducted at 3 p.m. According to the sworn statement of Captain Viger, "[i]t would [have] compromise[d] safety and security

to move [ninety-two] inmates outside of the facility in response to an electrical fire contained within one cell. . . . The decision to triage inmates within the unit was more controlled and allowed us to address every inmate given the limited number of staff. . . . The plaintiff was one of [fourteen] inmates [who] complained of some type of nonemergency issue during the incident.[5] . . . There was no indication that any of the inmates, even the two [who] were in the actual cell where the fire started, required transport outside the facility to the hospital. . . . The conduct of staff was in compliance with [d]epartment . . . policies and procedure. . . . It is important to maintain safety and security at all time[s], even during a fire. . . . Given the limited number of staff, [and] the [ninety-two] inmates, coupled with the size of the fire and the speed with which the fire was contained it was not practical to evacuate the housing unit." (Footnote added.)

Finally, in its memorandum of decision, the court summarized the plaintiff's sworn statement as follows. "The affidavit of the plaintiff . . . states in pertinent part that, on August 8, 2013, he was incarcerated at . . . Cheshire . . . in the North One Unit. There was a fire in the unit and the officers involved did not evacuate the unit. As a result, he suffered from smoke inhalation and to date he suffers from labored breathing. During the time that he was incarcerated at the subject facility, it was locked down one day each week for officer training. To the best of his knowledge this training was teaching the officers how to evacuate a unit in case of fire, and . . . officers have been trained to . . . leave the inmates in their cell in case of a fire and in transportation vehicles in case of accident. The plaintiff goes on to state that he now . . . fear[s] being locked in a cell."

In June, 2016, the plaintiff initiated this action against the defendants in their individual capacities, alleging, in one count, negligence and negligent supervision in connection with their handling of the electrical fire in cell 142 of North Block 1. The plaintiff subsequently amended his complaint to include a claim under 42 U.S.C. § 1983 alleging that, under the circumstances, the defendants' failure to evacuate his unit constituted a violation of his eighth amendment rights.[6] In his prayer for relief, the plaintiff sought both compensatory and punitive damages for the physical and emotional injuries that, he asserts, he suffered as a result of the defendants' conduct. The defendants thereafter filed a motion for summary judgment, arguing, with respect to the plaintiff's § 1983 claim, that the facts surrounding the incident, even when viewed in the light most favorable to the plaintiff, did not establish an eighth amendment violation.

The court granted the defendants' motion for summary judgment with respect to both the plaintiff's state

law negligence and § 1983 claims. Insofar as the latter is concerned,[7] the court determined that *Whitley* v. *Albers*, 475 U.S. 312, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986), a case involving the alleged use of excessive force by prison officials seeking to quell a prison disturbance, sets forth the applicable standard, which, for purposes of proving an eighth amendment violation, requires evidence that prison authorities engaged in the allegedly culpable conduct "maliciously and sadistically for the very purpose of causing harm." (Internal quotation marks omitted.) Id., 320–21. The trial court reasoned that this standard, rather than the less exacting "deliberate indifference" standard of *Estelle* v. *Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), which is applicable generally to claims seeking redress under the eighth amendment for alleged inhumane conditions of confinement, applied to the plaintiff's claim because the defendants were responding to an apparent emergency situation. Concluding that the facts were insufficient to demonstrate the kind of malevolent intent required under *Whitley*, the court rendered summary judgment for the defendants.

On appeal, the plaintiff maintains that the court incorrectly determined that the standard adopted in *Whitley* is applicable to the present case. Rather, the plaintiff contends, the court should have applied the test articulated in *Estelle* v. *Gamble*, supra, 429 U.S. 97, and its progeny, pursuant to which he would have been required to demonstrate that the prison officials acted with "deliberate indifference" to his health or safety in connection with their response to the electrical fire. Id., 104. We need not decide which test is applicable to the present case because, as we explain more fully hereinafter, the plaintiff cannot prevail on his eighth amendment claim even under the less demanding "deliberate indifference" standard.

Before addressing the merits of the plaintiff's claim, we set forth the legal principles governing the trial court's decision granting the defendants' motion for summary judgment and our standard of review. "Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he

trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Dunn* v. *Northeast Helicopters Flight Services, L.L.C.*, 206 Conn. App. 412, 424, 261 A.3d 15, cert. granted, 338 Conn. 915, 259 A.3d 1180 (2021).

With respect to the plaintiff's claim of a constitutional violation, it is well established that the eighth amendment protects inmates from cruel and unusual punishment by prison officials; see, e.g., *Wilson* v. *Seiter*, 501 U.S. 294, 296–97, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991); because, "when the [s]tate takes a person into its custody and holds him there against his will, the [c]onstitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . . The rationale for this principle is simple enough: when the [s]tate by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the [e]ighth [a]mendment . . . ." (Citation omitted; footnote omitted.) *DeShaney* v. *Winnebago County Dept. of Social Services*, 489 U.S. 189, 199–200, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989). In this prison context, however, punishment will be deemed cruel and unusual only upon a showing of "the unnecessary and wanton infliction of pain." (Internal quotation marks omitted.) *Estelle* v. *Gamble*, supra, 429 U.S. 103. To succeed on a claim founded on the eighth amendment, therefore, an inmate must allege and prove "two elements, one subjective and one objective"; *Crawford* v. *Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015); namely, (1) a deprivation that is "objectively, 'sufficiently serious,' " and (2) "a 'sufficiently culpable state of mind' " on the part of the defendant officials. *Farmer* v. *Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); see also *Faraday* v. *Commissioner of Correction*, 288 Conn. 326, 338–39, 952 A.2d 764 (2008) (same).

As the United States Supreme Court has explained, "[w]hat is necessary to establish an 'unnecessary and wanton infliction of pain' . . . varies according to the nature of the alleged constitutional violation. . . . For example, the appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.' See *Estelle* v. *Gamble*, [supra, 429 U.S 104]. This standard is appropriate because the [s]tate's responsibility to provide inmates with medical

care ordinarily does not conflict with competing administrative concerns. *Whitley* [v. *Albers*, supra, 475 U.S. 320].

"By contrast, officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Despite the weight of these competing concerns, corrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.' [Id.] We accordingly concluded in *Whitley* that application of the deliberate indifference standard is inappropriate when authorities use force to put down a prison disturbance. Instead, 'the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." ' [Id., 320–21]." (Citation omitted.) *Hudson* v. *McMillian*, 503 U.S. 1, 5–6, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992); see also *Al-Jundi* v. *Mancusi*, 926 F.2d 235, 237–38 (2d Cir.) ("[t]his more exacting standard is imposed not to foster brutality that results from deliberate indifference but to lessen the risk of harm to both prisoners and prison personnel that might result if those responsible for restoring order in the context of prison riots became hesitant to act promptly and effectively in apprehension of liability too easily imposed"), cert. denied, 502 U.S. 861, 112 S. Ct. 182, 116 L. Ed. 2d 143 (1991).

As noted previously in this opinion, the court applied the heightened *Whitley* standard to the plaintiff's claim and concluded that he could not meet that exceedingly rigorous test under the circumstances presented because there is no evidence that, once the defendants learned of the electrical fire, they decided not to evacuate the plaintiff in bad faith and with the sole purpose of causing him harm. On appeal, the plaintiff contends that the court should have used the "deliberate indifference" standard, the application of which, he further maintains, would give rise to a triable issue for determination by the fact finder. Although the defendants make a strong argument that the court was correct in concluding that the *Whitley* standard, rather than the "deliberate indifference" standard set forth in *Estelle* v. *Gamble*, supra, 429 U.S. 104, is applicable under the emergent circumstances of this case, we need not decide which test applies because it is apparent that the plaintiff cannot surmount even the lesser hurdle erected under the "deliberate indifference" standard.

As the United States Supreme Court explained in *Farmer* v. *Brennan*, supra, 511 U.S. 835, for eighth amendment purposes, "deliberate indifference entails something more than mere negligence" but "is satisfied by something less than acts or omissions for the very

purpose of causing harm or with knowledge that harm will result." In other words, "deliberate indifference [lies] somewhere between the poles of negligence at one end and purpose or knowledge at the other . . . ." Id., 836. Clarifying the meaning of "deliberate indifference," the court in *Farmer* equated it with "subjective recklessness as used in the criminal law"; id., 839; and explained that, pursuant to such a standard, "a prison official cannot be found liable under the [e]ighth [a]mendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[8] Id., 837. Thus, "an official's failure to alleviate a significant risk that he should have perceived but did not . . . [does not violate the eighth amendment]." Id., 838. Indeed, "[b]ecause . . . prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment, it remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety. . . . Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id., 844.

Moreover, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the [e]ighth [a]mendment is to ensure reasonable safety . . . a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions . . . . Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the [eighth amendment]." (Citations omitted; internal quotation marks omitted.) Id., 844–45. Finally, as is apparent from this explication of the "deliberate indifference" test, it is itself a "stringent standard of fault." (Internal quotation marks omitted.) *Faraday* v. *Commissioner of Correction*, supra, 288 Conn. 339.

Applying this standard to the present case, we conclude that it is abundantly clear that the plaintiff cannot prevail because the facts, even viewed most favorably to the plaintiff, simply do not support a finding that the defendants acted with deliberate indifference merely because they did not evacuate him following the electrical fire. The defendants responded immediately to the fire, which did not occur in the plaintiff's cell and was confined to the one cell in which it did occur, and it

was extinguished within three minutes of when the inmates occupying that cell saw and reported it. Even though smoke from the fire spread throughout the plaintiff's unit and into his cell, the plaintiff was afforded medical attention minutes after the fire was brought under control. Although it is regrettable that the plaintiff and others suffered smoke inhalation, the plaintiff was evaluated by medical staff, and his cell block was returned to normal, very shortly after the fire was extinguished. Considering the extremely limited duration of the incident and the swift amelioration of any harm that possibly could have resulted from it, there simply was no need for the defendants to evacuate the plaintiff or any other inmates residing in his unit. The decision not to evacuate the affected or potentially affected inmates is all the more justifiable in light of the fact that there were ninety-two inmates in that unit, and staff was beginning a shift change at the very moment the fire was discovered. In such circumstances, we will not second-guess the reasoned judgment of the defendants that inmate security and safety would be best served by the approach they took. Cf. *Vandever* v. *Commissioner of Correction*, 315 Conn. 231, 248, 106 A.3d 266 (2014) ("The judgment of prison officials . . . like that of those making parole decisions, turns largely on purely subjective evaluations and on predictions of future behavior . . . . It therefore is not the role of this court to second-guess that decision, especially when, as in the present case, there is ample reason, based on the undisputed evidence, to support it." (Citation omitted; internal quotation marks omitted.)).

In sum, there is nothing in the record to suggest that the defendants, aware of a significant risk of harm to the plaintiff, ignored that risk in determining that evacuation was unnecessary. On the contrary, the facts establish the opposite: the defendants acted quickly, reasonably and with due regard for the health and welfare of the plaintiff and the other inmates in his unit. The fact that the plaintiff would have preferred to be evacuated and purports to believe that such an evacuation was the only viable or appropriate option available to the defendants does not make it so. And even if it were, the plaintiff's claim fails in the absence of any evidence indicating that the defendants consciously disregarded a substantial risk that serious harm might befall him by virtue of their decision to address the incident as they did—a decision they had to make nearly instantaneously on learning of the fire. Consequently, the exceptionally prompt and efficient manner in which the defendants went about extinguishing the fire and providing medical assistance to the plaintiff does not make out a case of deliberate indifference by the defendants.[9] The plaintiff, therefore, has failed to demonstrate that the court incorrectly concluded that the defendants are entitled to summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

\* In the summons and complaint, the three defendants are identified by title and last name only. Because the full names of two of the defendants are otherwise not apparent from the record, we refer to those defendants by title and last name only.

[1] Viger was promoted to deputy warden during the pendency of this case. Because, however, he was a captain at the time of the incident that is the subject of this appeal, we refer to him as such.

[2] Title 42 of the United States Code, § 1983, provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

[3] The eighth amendment to the United States constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII.

[4] The plaintiff is serving a fifty year term of imprisonment for a murder he committed in 1990. See *State* v. *Francis*, 228 Conn. 118, 635 A.2d 762 (1993).

[5] As the trial court observed, according to the incident report, which was signed by Lieutenant Wilkens, among others, "[t]he most common complaints were about the smell and some difficulty breathing properly."

[6] The trial court's memorandum of decision contains the following summary of the plaintiff's allegations. "The plaintiff alleges that, on or about August 8, 2013, he was incarcerated at . . . Cheshire . . . . While incarcerated [there], he was subjected to mental and physical injury by the defendants. The plaintiff claims that there was a fire incident in his block and the smoke and/or fumes were coming into his room through the wall ventilation. The plaintiff asserts that he was terrified in his cell and thought he might die because of smoke and fumes. The plaintiff alleges that, during the incident, no fire alarm was activated, and officers seemed confused. Subsequently, a triage nurse saw the plaintiff, and he claims that he was suffering from labored breathing, a scratchy throat, burning eyes, lightheadedness, and [mental] trauma. The plaintiff was sent to a medical department and was seen by a doctor. The plaintiff contends he was not treated for his mental trauma.

"The [plaintiff further] alleges that the defendants have no regard for the safety or well-being of the inmates, [and] the defendants violated the agency regulations and have an unwritten policy not [to] rescue the inmates. The complaint further alleges that the injuries and losses suffered by the plaintiff were caused by the defendants' breach of statutory and regulatory duty." (Emphasis omitted.)

[7] The plaintiff has not appealed from the trial court's judgment in favor of the defendants with regard to his negligence and negligent supervision claims. Accordingly, we need not further discuss those claims or the trial court's disposition of them.

[8] "With respect to the objective component of the deliberate indifference standard, the term 'sufficiently serious' has been described as 'a condition of urgency, one that may produce death, degeneration, or extreme pain.' . . . *Hathaway* v. *Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)." *Faraday* v. *Commissioner of Correction*, supra, 288 Conn. 339 n.12.

[9] Of course, because the plaintiff cannot prevail under the "deliberate indifference" standard, he also cannot succeed under the more demanding standard set forth in *Whitley*, and the plaintiff does not claim otherwise.